UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| JASON D. MONACO, | : | Case No. 2:25-cv-378 |
| Plaintiff, | : | |
| vs. | : | District Judge Douglas R. Cole |
| | : | Magistrate Judge Kimberly A. Jolson |
| EDWARD PERKINS, *et al.*, | : | |
| Defendants. | : | |

## ORDER & REPORT AND RECOMMENDATION

This matter is before the Court on several motions. For the following reasons, the Undersigned **RECOMMENDS** that Plaintiff's Motion for a Preliminary Injunction (Doc. 18) be **DENIED** and Defendants' Motion to Strike (Doc 25) be **DENIED as moot**. The Court also **DENIES without prejudice** Plaintiff's Motion to Compel Production (Doc. 24) and Motion for Sanctions (Doc. 35). Finally, Plaintiff is **ORDERED** to file his response to Defendants' Motion to Stay (Doc. 32) by October 31, 2025.

**I.    BACKGROUND**

Plaintiff Jason Monaco, who is incarcerated at Noble Correctional Institution ("NCI") and proceeds *pro se*, joins the ranks of numerous plaintiffs in Ohio challenging the Ohio Department of Rehabilitation and Corrections' ("ODRC") mail policies. (Doc. 5). Briefly, his Complaint alleges that in February 2022, ODRC Director Chambers-Smith "signed and approved" a new legal mail policy. (Doc. 5 at 2). Since that time, his mail from this Court and the Northern District of Ohio has been opened outside of his presence, read, and copied by NCI mailroom employees on numerous occasions. (Doc. 5 at 1–8). This occurred despite Plaintiff telling NCI mailroom supervisor Edward Perkins in both November 2022 and February 2023 that he wanted "all legal

mail from the courts to be opened in front of [him] and signed for by [him]." (*Id.* at 1–2). Yet, Perkins allegedly "continue[d] to instruct . . . his mailroom staff to open, read[,] inspect and copy [Plaintiff's] legal mail from the Federal Courts outside [his] presence." (*Id.* at 6).

Plaintiff includes two tables in his Complaint that together purport to show 29 instances between December 6, 2022, and February 14, 2025, when mail he received from this Court and the Northern District of Ohio were opened outside of his presence. (*Id.* at 3–5). Plaintiff goes on to say that each of the alleged instances of his mail from the Northern District of Ohio being opened outside of his presence occurred after the entry of a stipulated order in a separate prisoner mail case, *Allah v. Chambers-Smith*, 2:22-cv-21-EAS-KAJ (S.D. Ohio) (Doc. 91 at ¶ 20)), which he claims requires "ODRC, its institutions, and its mailrooms, mailroom supervisors, mailroom staff, and institution staff and employees" to treat mail from the federal courts as legal mail. (Doc. 5 at 7). Plaintiff also alleges that a February 4, 2025, report and recommendation in his habeas case was returned to the Northern District of Ohio. (*Id.* at 3). When he sent a "kite" on February 16 asking about the document, Perkins responded that the document was returned because it lacked a "control number" and had too many pages. (*Id.*).

The Court previously construed Plaintiff's Complaint as raising the following claims against Defendants in their individual capacities: violation of his First Amendment right to receive legal mail; violation of his First Amendment right to access the courts; violation of the stipulated legal mail order in *Allah*; and civil conspiracy under Section 1983. (Doc. 6; *see generally* Doc. 5).

In the weeks following the Court's scheduling order (Doc. 15), Plaintiff filed a Motion for a Preliminary Injunction (Doc. 18), a Motion to Compel Production of Documents (Doc. 24), and a Motion for Sanctions (Doc 35). And Defendants filed a Motion to Strike (Doc. 25), and a Motion to Stay (Doc. 32). All the motions are ready for the Undersigned's consideration because they are

2

fully briefed, because the time to do so has expired, or because of the parties' conferral efforts. (Docs. 18, 20, 22, 24, 25, 27 33, 32, 36, 37, 38).

## II. DISCUSSION

The Court considers Plaintiff's Motion for a Preliminary Injunction first before turning to the other motions.

### A. Motion for a Preliminary Injunction and Motion to Strike

Plaintiff's Motion for a Preliminary Injunction seeks to enjoin Defendants from opening, reading, and copying Plaintiff's purported legal mail outside of his presence. (Doc. 18). As support, Plaintiff contends that in January 2023, he sent a letter to an attorney seeking legal representation in a civil rights case against ODRC. (*Id.* at 4). And in July 2025, he sent a letter to a different attorney seeking legal representation for this case. (*Id.*). Both letters were "returned to sender," potentially due to an incorrect mailing address. (*Id.* at 7, 9). Upon their return to the NCI mailroom, mailroom staff opened, read, and copied the letters before delivering them to Plaintiff. (*Id.* at 4 (stating of the 2023 letter, the note was delivered electronically via Plaintiff's tablet)). Plaintiff argues because this "pattern of conduct" violates his First Amendment rights, an injunction is necessary to prevent immediate and irreparable injury. (*Id.*). Defendants oppose the injunction request (Doc. 20), and separately ask the Court to strike evidence and arguments attached to Plaintiff's reply as impermissibly amending the pleadings or as otherwise barred by the statute of limitations (Doc. 25).

#### 1. Standard

Preliminary injunctive relief "is an extraordinary remedy," and the burden to obtain it is high. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Ultimately, Plaintiff must show "that the circumstances clearly demand it." *Id.* (citing *Leary v.*

*Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). Further, because Plaintiff's request is subject to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

The standard to obtain a temporary restraining order or a preliminary injunction are largely the same. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F.Supp.3d 665, 670 (S.D. Ohio 2016). For either, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (collecting cases).

The movant must make a "clear showing" on all four factors. *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025). Additionally, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). This is especially true "'[w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, [as] the likelihood of success on the merits often will be the determinative factor.'" *Allah v. Smith*, No. 2:22-CV-21, 2022 WL 4395680, at *6 (S.D. Ohio Sept. 23, 2022) (quoting *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014)). To establish a strong likelihood of success on the merits, Plaintiff must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that he must "show, at a minimum, serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted).

    *2.*  *Analysis*

  At the heart of Plaintiff's Motion is ODRC's revised legal mail policy. As this Court previously summarized, "[t]he policy requires senders of 'legal mail,' including courts, attorneys, and legal organizations, to obtain a 'control number' from the prisoner's correctional institution. If the sender does not, the prison may treat the mail as 'regular mail' and copy and inspect it outside of the prisoner's presence." *Warner v. Chambers-Smith*, No. 2:24-CV-1565, 2025 WL 1904537, at *1 (S.D. Ohio July 10, 2025); *see* Ohio Admin. Code 5120-9-17(B)(2). Policy also provides that incoming legal mail must clearly bear the return address of an "attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee." *See* Ohio Admin. Code 5120-9-17(B)(2).

  Though not completely clear, Plaintiff appears to seek either (1) an order enjoining Defendants from opening or copying "attorney correspondence" without a control number (Doc. 18 at 4–5); or (2) an order generally enjoining ODRC from enforcing its control number policy (Doc. 22 at 2–3). Ultimately, the Court should not grant Plaintiff's request because he has not demonstrated likelihood of success on the merits.

  As support for his preliminary injunction request, Plaintiff provides two examples of "attorney correspondence" being opened outside of his presence. (Doc. 18 at 4). As explained above, both were initially "outgoing mail" from Plaintiff to attorneys that were then "returned to sender." These examples do not demonstrate that Plaintiff is likely to succeed on the merits of his claim because the letters are not "legal mail" under Ohio law. Neither were marked with a valid control number provided by ODRC. (*Id.* at 7, 9); *see* Ohio Admin. Code 5120-9-17(B)(2). And they both bore Plaintiff's return address rather than that of an "attorney-at-law." Ohio Admin. Code 5120-9-17(B)(2).

5

Plaintiff argues that because his mail was initially "outgoing mail" to attorneys, there is some level of constitutional protection afforded to it. (Doc. 22 at 2). But in every practical sense, Plaintiff's letters became "incoming mail" when the post office returned them to him. And ODRC's policy about what constitutes legal incoming mail is clear. Ohio Admin. Code 5120-9-17(B)(2). Simply put "Plaintiff's failure to demonstrate that the mail at issue falls within the definition of 'legal mail' under Rule 5120-9-17(B)(2) weighs against finding a substantial likelihood of success on the merits." *Allah*, 2022 WL 4395680, at *6 (denying a plaintiff's request to enjoin ODRC from enforcing the legal mail control number policy). Because the Undersigned concludes this is a "determinative factor"—as is "often the case in the First Amendment context"—the Undersigned need not continue through the rest of the factors. *Id.*

Moreover, to the extent Plaintiff seeks broader injunctive relief, as implied in his reply (Doc. 22 at 2–3 (arguing the control number policy is generally unconstitutional and citing his complaint), the Undersigned recommends against it. As this Court has recognized several times, whether the definition of "legal mail" under ODRC policy is constitutional is "far from well-settled." *See, e.g.*, *Allah v. Chambers-Smith*, No. 2:22-cv-21, 2023 WL 4030632, at *3 (S.D. Ohio June 15, 2023), *report and recommendation adopted*, No. 2:22-cv-21, 2023 WL 5215408 (S.D. Ohio Aug. 15, 2023); *Warner*, 2025 WL 1904537, at *3. Courts within this District have not yet ruled definitively on the issue, though some have expressed concerns about the policy's legality. *See, e.g.*, *Straughter v. Eddy*, No. 2:23-cv-1268, 2023 WL 6290069, at *4 (S.D. Ohio Sept. 27, 2023) (saying, in light of First Amendment precedent within the Sixth Circuit, "it is no surprise that ODRC's new policy has generated constitutional challenges"); *King v. Aramark Corr. Serv.*, No. 2:23-cv-156, 2024 WL 3461784, at *2 (S.D. Ohio Mar. 22, 2024) (commenting that the control number policy "does not square with" Sixth Circuit precedent). On the other hand, at least one

court within the Northern District of Ohio has upheld the policy as constitutional. *Quinn v. Rodriguez*, No. 3:22-cv-661, 2025 WL 623762, at *7–9 (N.D. Ohio Feb. 26, 2025) (ruling on summary judgment that ODRC's control number policy does not violate the First Amendment), *reconsideration denied*, No. 3:22-CV-00661-DAC, 2025 WL 2771527 (N.D. Ohio Sept. 29, 2025).

Against this backdrop, Plaintiff's motion asks for too much, too early. The Sixth Circuit is clear that the purpose of preliminary injunctive relief is to "preserve the relative positions of the parties until a trial on the merits can be held." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025). Instead of preserving the relative positions of the parties, "[t]he requested broad preliminary injunctive relief would require this Court to first make factual findings concerning what is, or should be, categorized as 'legal mail' under the ODRC policy before drawing legal conclusions concerning the constitutionality of the 'legal mail' policy as applied." *Shine-Johnson v. Chambers-Smith*, No. 2:22-CV-3236, 2024 WL 1714482, at *4 (S.D. Ohio Apr. 22, 2024), *report and recommendation adopted*, No. 2:22-CV-03236, 2024 WL 4799910 (S.D. Ohio Nov. 15, 2024), *reconsideration denied*, No. 2:22-CV-03236, 2025 WL 218716 (S.D. Ohio Jan. 16, 2025). The better course is for Plaintiff to "continue to pursue his claims through the normal litigation process." *Allah*, 2022 WL 4395680, at *6; *Shine-Johnson*, 2024 WL 1714482, at *4. Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's Motion for a Preliminary Injunction be **DENIED**.

Given this recommendation, the Undersigned further **RECOMMENDS** that Defendants' Motion to Strike be **DENIED as moot**. Though Defendants argue that the arguments and affidavit attached to Plaintiff's reply memorandum attempt to alter the facts of the original Complaint, the Undersigned does not agree with that read. Plaintiff also makes clear the affidavit was introduced

7

to support his "need for an injunction." (Doc. 33 at 1).

### B. Motion to Compel Production and Motion for Sanctions

Next, the Court considers Plaintiff's Motion to Compel Production of Documents and Motion for Sanctions. (Docs. 24, 35). In the first, Plaintiff challenges Defendant Perkins's objections to certain to discovery requests. (*Id.*). Defendants respond, however, that they did not receive any correspondence from Plaintiff about attempting to resolve this dispute extrajudicially. (Doc. 27). They note both the Federal and Local Rules require good faith conferral before filing a motion to compel. (*Id.*); *see* Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1. Similarly, in the second motion, Plaintiff seeks sanctions for Defendants alleged failure to respond to discovery requests. (Doc. 35). Defendants again supply that Plaintiff did not speak to them about these issues. (Doc. 37 (also stating that some discovery requests were sent to Defendant Chambers-Smith before she was properly served)).

It now appears the parties are trying to resolve their differences without Court intervention. (Doc. 38). The parties purport that Plaintiff has remailed certain discovery requests and intends to renew others. (*Id.*). Plaintiff will also provide a "list of any other information he is looking for, and Defendants will respond in a timely manner upon receipt of his requests." (*Id.*).

Given this progress, the Court **DENIES** both Motions **without prejudice**. Should the issues underlying either motion persist, Plaintiff may renew his requests. But he must work with Defendants to attempt to resolve his discovery issues first. Any renewed motion to compel or for sanctions must include a statement certifying he has done so.

### C. Motion to Stay

Finally, Defendants filed a Motion to Stay this case pending the resolution of *Shine-Johnson v. Chambers-Smith*, Case No. 20 2:22-cv-3236 (S.D. Ohio). (Doc. 32). Defendants assert

8

that case raises similar legal and factual issues about ODRC's legal mail policies and Ohio Administrative Code 5120-9-17. (*Id.*). And judicial economy favors a stay. (*Id.*). Though Plaintiff mentioned the stay request in his motion for sanctions (Doc. 35), he did not directly respond to it. Plaintiff is **GRANTED** until October 31, 2025, to respond to the Motion to Stay. If he fails to do so, the Court will treat the Motion as unopposed.

### III. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiff's Motion for a Preliminary Injunction (Doc. 18) be **DENIED** and Defendants' Motion to Strike (Doc 25) be **DENIED as moot**. The Court also **DENIES without prejudice** Plaintiff's Motion to Compel Production (Doc. 24) and Motion for Sanctions (Doc. 35). Finally, Plaintiff is **ORDERED** to file his response to Defendants' Motion to Stay (Doc. 32) by October 31, 2025.

IT IS SO ORDERED.

Date: October 17, 2025

s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

### PROCEDURE ON OBJECTIONS:

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).