UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| JASON D. MONACO, | : Case No. 2:25-cv-378 |
| Plaintiff, | : |
| vs. | : District Judge Douglas R. Cole |
| | : Magistrate Judge Kimberly A. Jolson |
| EDWARD PERKINS, *et al.*, | : |
| Defendants. | : |

## OPINION & ORDER

Before the Court is Defendants' Motion to Stay. (Doc. 32). For the following reasons, the Court **GRANTS in part and DENIES in part** the Motion. Specifically, the dispositive motion deadline is **STAYED**, and discovery is **STAYED in part**. The parties are **ORDERED** to file discovery status reports on or before November 21, 2025; December 12, 2025; and January 9, 2026. Defendants are **ORDERED** to file a status report discussing the continued prudence of the partial stay on or before January 16, 2026.

**I.     BACKGROUND**

As the Court recently explained, Plaintiff Jason Monaco, who is incarcerated at Noble Correctional Institution ("NCI"), joins the ranks of numerous plaintiffs in Ohio challenging the Ohio Department of Rehabilitation and Corrections' mail policies.[1] (Doc. 5). Briefly, his *pro se* Complaint alleges that in February 2022, Ohio Department of Rehabilitation and Corrections

---

[1] "The following is a list of known cases that include a claim, or claims, relating to the Legal Mail Policy: 3:21-cv-0035, 2:22-cv-0021, 2:22-cv-2469, 2:22-cv-3236, 2:22-cv-3604, 1:22-cv-0170, 2:23-cv-2809, 2:23-cv-3147, 2:24-cv-0393, 2:24-cv-0676, 2:24-cv-0764, 2:25-cv-0143, 2:25-cv[-]0378, 1:25-cv-0501. In addition, there are numerous other cases pending wherein plaintiffs have filed a motion asking for a control number or an order directing ODRC not to open legal mail. Finally, a class action complaint has been filed challenging another variance to the Legal Mail Policy. *See Ohio Justice and Policy Center v. Chambers-Smith et al*, 1:25-cv-0291." *Williams v. Chambers-Smith, et al.*, No. 2:24-cv-393 (S.D. Ohio), Doc. 36.

("ODRC") Director Chambers-Smith "signed and approved" a new legal mail policy, 75-MAL-03. (Doc. 5 at 2, 7). As this Court previously summarized, "[t]he policy requires senders of 'legal mail,' including courts, attorneys, and legal organizations, to obtain a 'control number' from the prisoner's correctional institution. If the sender does not, the prison may treat the mail as 'regular mail' and copy and inspect it outside of the prisoner's presence." *Warner v. Chambers-Smith*, No. 2:24-CV-1565, 2025 WL 1904537, at *1 (S.D. Ohio July 10, 2025); *see* Ohio Admin. Code 5120-9-17(B)(2).

Since 75-MAL-03's implementation, alleges Plaintiff, his mail from courts has been opened outside of his presence, read, and copied by NCI mailroom employees on numerous occasions. (Doc. 5 at 1–8). Plaintiff also alleges that on at least one occasion, mail from a federal court was withheld without his knowledge and then returned to sender. (*Id.* at 3). All this occurred despite Plaintiff telling NCI mailroom supervisor Edward Perkins in both November 2022 and February 2023 that he wanted "all legal mail from the courts to be opened in front of [him] and signed for by [him]." (*Id.* at 1–2). Yet, Perkins allegedly "continue[d] to instruct . . . his mailroom staff to open, read[,] inspect and copy [Plaintiff's] legal mail from the Federal Courts outside [his] presence." (*Id.* at 6; *see also id.* at 3–5 (listing instances between December 2022 and February 2025 when Plaintiff's mail from this Court and the Northern District was opened outside of his presence)).

The Court previously construed Plaintiff's Complaint as raising the following claims against Defendants in their individual capacities: violation of his First Amendment right to receive legal mail; violation of his First Amendment right to access the courts; violation of the stipulated legal mail order in *Allah v. Chambers-Smith*, No. 2:22-cv-21-EAS-KAJ (S.D. Ohio) (Doc. 91); and civil conspiracy under Section 1983. (Doc. 6; *see generally* Doc. 5).

Over the last several months, the parties have exchanged discovery. (*See, e.g.*, Doc. 38). As the case schedule currently stands, discovery must be completed by January 14, 2026, and dispositive motions are due February 16. (Doc. 15). Now, though, Defendants seek to stay all proceedings pending resolution of *Shine-Johnson, et al. v. Chambers-Smith, et al.*, No. 2:22-cv-3236 (S.D. Ohio) ("*Shine-Johnson*"). (Doc. 32; *see also* Doc. 43). Plaintiff opposes the stay. (Doc. 40). This matter is ready for consideration.

## II. STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The proponent of a stay must "show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Env't Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). And while the "most important factor is the balance of the hardships," the Court must "also consider whether granting the stay will further the interest in economical use of judicial time and resources." *Poffenbarger v. Kendall*, No. 3:22-CV-1, 2022 WL 7180295, at *2 (S.D. Ohio Sept. 2, 2022) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627–28 (6th Cir. 2014)) (citation modified).

## III. DISCUSSION

Defendants seek an order staying this case during the pendency of *Shine-Johnson*. (Doc. 32). They purport that the similarities between this case and *Shine-Johnson* implicate judicial economy concerns. (*Id.* at 3). They also note the Court's order appointing the plaintiffs in *Shine-Johnson* counsel and the upcoming dispositive motion deadline in that case. (*Id.*); *but see Shine-Johnson*, Doc. 101 (granted joint motion to stay the discovery and the dispositive motions

3

deadlines pending a decision on plaintiffs' upcoming motion to amend the complaint)). Ultimately, the Court finds that only a partial stay is justified here.

Up front, this Court has stayed several other cases challenging aspects of ODRC's mail policies until a decision is rendered in *Shine-Johnson*. *See, e.g.*, *Williams v. Chambers-Smith, et al.*, No. 2:24-cv-393; *Holmes v. Ohio Department of Rehabilitation and Correction, et. al.*, No. 2:23-cv-3147; *Swain v. Chambers-Smith, et al.*, No. 2:23-cv-2809. In each, the Court found that judicial economy justified the stay. *Id.* That judicial economy concern extends here because aspects of this case overlap with aspects of *Shine-Johnson*. Plaintiff's Complaint alleges that Defendants violated his constitutional rights by treating mail from courts as regular mail rather than as legal mail. (Doc. 5 at 4–6). He, in large part, ties the alleged constitutional violations to Chambers-Smith's enactment of 75-MAL-03. (*Id.* at 7 (citing *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003)). These issues mirror issues raised in *Shine-Johnson*. *See Shine-Johnson*, Doc. 47 at 11–13 (alleging Chambers-Smith "made changes" to 75-MAL-03 that allow prisons to open legal mail outside of the presence of inmates in violation of constitutional rights), 15 (alleging mailroom defendants, acting under the policy, impermissibly opened legal mail from courts)).

Plaintiff acknowledges these "parallel issues" between his case and *Shine-Johnson*. (Doc. 40 at 2 (specifically identifying the "constitutionality of the legal mail policy 75-MAL-03 and its associated 5120-9-l 7(B)(2) Administrative Rule")). Nonetheless, he submits that his case is different. (*Id.* (citing *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). Plaintiff points to his individual claims—including that Defendant Perkins impermissibly opened or held legal mail— as being too different from anything alleged in *Shine-Johnson* to warrant slowing his case. (*Id.* at 2–3). He argues that a stay will only delay discovery he needs to litigate all his individualized claims. (*Id.*).

4

While Plaintiff attempts to minimize *Shine-Johnson*'s similarity to this matter, the constitutionality of 75-MAL-03 and how ODRC defines legal mail are central to both cases. Accordingly, judicial economy favors staying at least part of this matter while the Court considers *Shine-Johnson*. *See Poffenbarger*, 2022 WL 7180295, at *2; *Williams*, No. 2:24-cv-393; *Holmes*, No. 2:23-cv-3147; *Swain*, No. 2:23-cv-2809. Still, Plaintiff's concerns about discovery are not unfounded. As he states, there are parts of this case that are particular to him. It follows that Plaintiff should still be allowed to probe those matters now. This outcome sufficiently balances the burden of a stay on Plaintiff while also preserving judicial economy.

Accordingly, the Court **PARTIALLY STAYS** this case. Specifically, the Court **STAYS** the dispositive motions deadline. The Court also **STAYS** discovery related to ODRC's mail policies at large and ODRC's general treatment of legal mail. The parties may proceed on discovery concerning Plaintiff's individualized claims. Namely, Plaintiff may seek discovery related to his allegations that his mail was impermissibly opened and copied outside of his presence; and related to his allegations that his mail was impermissibly held or returned to sender.

To facilitate the continued exchange of this discovery, the parties are **ORDERED** to confer on a discovery plan. The Court observes that the parties previously did some of this work. (Doc. 38 (joint status report describing some discovery Plaintiff intends to seek)). But they are required to confer again and collaboratively decide (1) which of Plaintiff's pending or upcoming discovery requests fall within the scope of discovery allowed to proceed under this Order; and (2) what individualized discovery Plaintiff still requires. The Court expects both sides to approach this conference in good faith. The parties are **ORDERED** to file a joint status report **on or before November 21, 2025**. The report should provide an update on the conference, detail what discovery

5

has been completed thus far, and describe the parties' plan to complete the remaining discovery for Plaintiff's individual claims.

In that same vein, the discovery deadline in this case is currently January 14, 2026. (Doc. 15). The Court will maintain this deadline for the discovery permitted to continue under this Order. The parties are **ORDERED** to file two more joint status reports detailing their progress. The first is due **on or before December 12, 2025**. And the second is due **on or before January 9, 2026**.

Lastly, Defendants are **ORDERED** to file another status report, updating the Court on the continued advisability of the partial stay in light of developments in *Shine-Johnson*. This report is due **on or before January 16, 2026**. The Court notes that should the disposition of *Shine-Johnson* be continually postponed, the Court may entertain lifting the stay in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Stay. (Doc. 32). The dispositive motion deadline is **STAYED**, and, as explained above, discovery is **STAYED in part**. The parties are **ORDERED** to file discovery status reports on or before November 21, 2025; December 12, 2025; and January 9, 2026. Defendants are **ORDERED** to file a status report discussing the continued prudence of the partial stay on or before January 16, 2026.

IT IS SO ORDERED.

Date: November 7, 2025            s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE