**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JASON DAVID MONACO,

        Plaintiff,

                                Case No. 2:25-cv-378

        v.

                                **JUDGE DOUGLAS R. COLE**

EDWARD PERKINS, et al.,             Magistrate Judge Jolson

        Defendants.

### OPINION AND ORDER

Plaintiff Jason David Monaco, who is incarcerated in Noble Correctional, an Ohio Department of Rehabilitations and Corrections (ODRC) facility, alleges that Defendants (various ODRC employees) violated his First Amendment rights by opening his legal mail outside his presence. (Compl., Doc. 5, #63). Today, the Court does not reach Monaco's claims themselves, instead addressing Monaco's Motion for a Preliminary Injunction (Doc. 18), his two motions related to discovery disputes, (Docs. 24, 35), and the resulting Report and Recommendation (R&R, Doc. 39) issued by the Magistrate Judge. In that R&R, she recommends that the Court deny Monaco's request for a preliminary injunction (and Defendants' related Motion to Strike), and denied Monaco's Motion to Compel Production (Doc. 24) and Motion for Sanctions (Doc. 35). (Doc. 39, #215–16). Monaco objected to that recommendation and the denials. (*See generally* Doc. 42). As described below, the Court **OVERRULES** Monaco's Objections (Doc. 42), **ADOPTS** the R&R (Doc. 39), and thus **DENIES** Monaco's Motion for a Preliminary Injunction (Doc. 18). The Court also **DENIES** Defendants' Motion to Strike (Doc. 25) as moot.

## BACKGROUND

Plaintiff Jason David Monaco takes issue with "Ohio's New Procedures for Classifying 'Legal Mail' … adopted February 1st, 2022." (Doc. 5, #59). Classifying a particular letter as legal mail matters because in Ohio penal institutions, such mail can only be opened and inspected for contraband in the presence of the inmate recipient. *Straughter v. Eddy*, No. 2:23-cv-1268, 2023 WL 6290069, at *2 (S.D. Ohio Sep. 27, 2023). Prior to the February 2022 policy change, mail "clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee" was designated as legal mail. *Id.* (citing Ohio Admin. Code. § 5120-9-17(B)(2)). But now, post-policy change, all mail is "processed as regular mail, i.e., opened, copied and delivered to the addressee," *id.* at *3 (citation omitted) (emphasis omitted), "*unless the sender first applies for and obtains a 'valid control number' … for each piece of mail* sent to an inmate," *id.* at *2 (emphasis in original).

Disagreeing with that new policy, Monaco told Defendant Perkins, the officer stationed in Noble Correctional's mailroom, that he "would like all legal mail from the courts to be opened in front of [him] and signed for by [him]." (Doc. 5, #58–59). Monaco alleges that Perkins refused, with the officer "argu[ing] that the mail in question was not legal mail as it did not have a control number." (*Id.* at #59 (quotation marks omitted)). Monaco alleges that in total, twenty-nine documents from the courts (related to two federal dockets) addressed to him were opened, read, and copied outside his presence. (*Id.*). Compounding the problem, that allegedly occurred as to fourteen of the twenty-nine documents *after* a stipulated court order entered in

2

another case required ODRC to treat all mail sent from federal courts as legal mail. (*Id.*; *see also* Stipulated Order, *Allah v. Chambers Smith*, No. 2:22-cv-21 (S.D. Ohio June 25, 2024), Doc. 91). Monaco's Complaint brings § 1983 First Amendment claims against both Perkins and Defendant Annette Chambers-Smith, the Director of ODRC. (Doc. 5, #63–64).

Because it has some bearing on the motions today, the Court outlines the procedural history of this matter. Monaco filed his initial case on April 8, 2025, requesting in forma pauperis status. (Doc. 1). Because he is a prisoner proceeding pro se, the matter was referred under this Court's Amended Columbus General Order 22-01 to a Magistrate Judge for initial handling. The Magistrate Judge granted the request to proceed in forma pauperis on May 29, 2025, (Doc. 4), and the same day, screened Monaco's Complaint for frivolousness, ruling that his claims should be allowed to proceed, (Doc. 6).

Since that time, the parties have submitted a flurry of filings. First, Monaco filed a request for a preliminary injunction, again seeking to prevent the ODRC from opening, reading, and copying his legal mail outside his presence. (Doc. 18, #98). This time, he claims that "attorney correspondence" (instead of mail from federal courts) was not properly treated as legal mail. (*Id.*). In support of his motion, though, he does not rely on letters he *received* from attorneys, but rather points to two letters that he sent *out* to attorneys in search of representation in his cases against the ODRC that were then returned to sender. (*Id.* at #98, 100). Upon return to Noble Correctional

3

Institution, those letters were opened, read, and copied outside of Monaco's presence. (*Id.*).

Next, Monaco moved to compel certain discovery Defendants allegedly withheld that he claims are necessary for his case. (Doc. 24, #131). For example, he sought the names of the officers who opened his mail, internal memos discussing the legal mail policy, and a deposition of ODRC's legal counsel. (*Id.* at #131–32). After that, Defendants moved to strike Monaco's reply in support of his preliminary injunction request, claiming that the reply attempts to introduce new allegations and arguments not in the Complaint—allegations that are in fact barred on statute-of-limitation grounds. (Doc. 25, #151–52). Then, Defendant Perkins, along with Interested Party State of Ohio, asked that the Court stay all proceedings in this matter pending the resolution of *Shine-Johnson, et al. v. Chambers-Smith, et al.*, Case No. 2:22-cv-3236 (S.D. Ohio). (Doc. 32, #167). That case presents similar legal and factual issues to this one, as that plaintiff (who has representation) is likewise challenging ODRC's new legal mail policy. (*Id.*). For his part, Monaco, apparently still frustrated with the speed of discovery, moved for sanctions because Defendants provided "elusive responses" to his submitted interrogatories. (Doc. 35, #178).

Next came the Magistrate Judge's Order and R&R (Doc. 39), addressing some of the pending motions. There, the Magistrate Judge evaluated Monaco's request for a preliminary injunction under the four traditional factors and recommends its denial. (*Id.* at #211–15). Given that determination, the Magistrate Judge also recommends denying Defendants' Motion to Strike Monaco's reply as moot. (*Id.* at

#215). Next, the Magistrate Judge turned to Monaco's discovery complaints—his Motion to Compel (Doc. 24) and Motion for Sanctions (Doc. 35). (*Id.* at #216). The Magistrate Judge denied those motions because it "appear[ed] the parties [were] trying to resolve their differences without Court intervention." (*Id.*). But she did so without prejudice in case the underlying issues persisted. (*Id.*). The Magistrate Judge also granted Monaco until October 31, 2025, to respond to the Motion to Stay (Doc. 32), stating that if Monaco did not, that motion would be treated as unopposed. (Doc. 39, #216–17). Finally, the Magistrate Judge informed the parties that they had fourteen days to object to the Order and R&R. (*Id.* at #217).

First, Monaco filed his opposition to Defendants' Motion to Stay. (Doc. 40). There, he argued that while *Shine-Johnson* also concerns the constitutionality of ODRC's legal mail policy, this case presents individualized claims against the Defendants, and a stay would "only delay [] much needed discovery." (*Id.* at #220–21). Then, Monaco timely filed his objections to the R&R, (Doc. 42), objecting both to the recommended denial of his preliminary injunction request and the denial of his two discovery-related motions. Defendants responded to those objections, (Doc. 44), which rendered the R&R ripe for review.

But before the Court had an opportunity to act on it, a few more recent developments have also occurred. First, on November 7, 2025, the Magistrate Judge granted in part Defendants' Motion to Stay (Doc. 45). Specifically, the Magistrate Judge stayed the dispositive motion deadline and stayed discovery in part until a decision is rendered in *Shine-Johnson*. (*Id.* at #254–55). That is, the Magistrate Judge

5

permitted Monaco to continue seeking discovery on his individualized claims but stayed discovery related to ODRC's mail policies and general treatment of legal mail. (*Id.* at #255).

Unfortunately, that only led to more discovery disputes. The parties disagreed on the scope of the discovery stay, leading Monaco to file a Motion to Modify/Revise Order or In the Alternative Motion to Compel[] (Doc. 47). There, Monaco claimed that Defendants refused to answer interrogatories, even though they were outside the scope of the stay order. (*Id.* at #262). According to him, the interrogatories at issue did not question the policy's constitutionality writ large, but whether Defendant Perkins followed the policy regarding Monaco's mail. (*Id.*). After Defendants responded, (Doc. 48), the Magistrate Judge issued another opinion, staying Monaco's reply and ordering the parties to confer on the discovery issues and provide the Court with an update in their upcoming December 12 discovery status report, (Doc. 49, #272–73). In the end, after examining the parties' subsequent status reports, (*see* Docs. 50, 52, 54, 60), the Magistrate Judge determined that these issues were either "resolved or moot" and so denied Monaco's motion to revise the order or alternatively compel, (Doc. 47), without prejudice, (Doc. 61, #293–94). So that's where things stand.

## LEGAL STANDARD

When addressing dispositive motions, including requests for preliminary injunctions, Magistrate Judges issue a Report and Recommendation. *See* Fed. R. Civ. P. 72(b). And under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates*

*v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (quotation omitted). A litigant must identify each issue in the R&R to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). "In response to such an objection, the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Bates*, 2023 WL 4348835, at *1 (quotation omitted) (cleaned up).

When it comes to non-dispositive matters, a different approach applies. As to those, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (permitting judges to designate to magistrate judges any pretrial matter not excepted by the statute and to reconsider any decision on these pretrial matters under a "clearly erroneous or contrary to law" standard). "The 'clearly erroneous' standard applies to factual findings and the 'contrary to law' standard applies to legal conclusions." *Simms v. Warden*, No. 2:22-cv-474, 2024 WL 4783911, at *1 (S.D. Ohio Nov. 14, 2024). As to the former, factual findings are clearly erroneous if the Court has a "definite and firm conviction" that a magistrate judge has erred. *Id.* (citation omitted). As to the latter, legal conclusions are "'contrary to

7

law' when the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Id.* (citations omitted). Either approach affords the magistrate judge wide discretion, and the Court will reverse the order only if the magistrate judge abused that discretion. *Bonasera v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 2:19-cv-3817, 2021 WL 1785618, at *1 (S.D. Ohio May 5, 2021).

## LAW AND ANALYSIS

Monaco has objected to both (1) the Magistrate Judge's R&R regarding a dispositive matter (the preliminary injunction request), and (2) the Magistrate Judge's denial of two non-dispositive motions (his motions to compel and to sanction).[1] The Court reviews each but ultimately concludes that Monaco's objections are not well taken on either front.

### A. The Court Adopts the R&R and Denies the Request for Injunctive Relief.

The Court finds that Monaco cleared the first hurdle to obtain district court review—he offers sufficiently specific objections to the R&R. (*See* Doc. 42, #229–32). So the Court reviews the objected-to portions de novo. But while the Court *considers* the objections, that review does not change the outcome. As discussed below, the Court agrees with the R&R and adopts it in its entirety, denying the request for a preliminary injunction.

While his Complaint details his disagreements with the treatment of Monaco's incoming mail *from federal courts*, his preliminary injunction motion instead

---

[1] No one has objected to the Magistrate Judge's ruling on the Motion to Stay (Doc. 32), so the Court does not consider that ruling here.

8

concerns mail that Monaco characterizes as attorney correspondence. (Doc. 18, #98). Specifically, he alleges that the ODRC opened, read, and copied two letters outside his presence that he sent to prospective attorneys, which then bounced back to him as return to sender. (*Id.*). Monaco claims that this opening of his mail violated his First Amendment rights because attorney correspondence is "legally defined as 'legal mail'" under Sixth Circuit case law. (*Id.* (citing *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003))). So he requests an injunction to "stop the behavior."[2] (*Id.*).

The Magistrate Judge's R&R notes at the outset that it is unclear if Monaco is arguing that that his mail should have been considered legal mail under the ODRC policy (i.e., arguing prison employees wrongly applied the policy in opening the returned mail), or whether Monaco is seeking an injunction against the allegedly unconstitutional policy writ large (i.e., arguing that the policy allows the behavior that occurred, but that the Constitution does not). (Doc. 39, #213). In the end, the Magistrate Judge finds that it does not matter and recommends denial because Monaco has not demonstrated likely success on the merits under either interpretation. (*Id.*).

Monaco objects, clarifying his request as asking in the constitutional context whether "confidential correspondence that is clearly labeled as 'legal mail,' being

---

[2] As noted, the conduct on which he bases his request for a preliminary injunction is arguably different from the conduct forming the basis for his Complaint. That could pose a problem. Litigants can seek preliminary injunctive relief only for an injury that is related to the conduct in the Complaint. *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Because the Court ultimately denies injunctive relief on other grounds, however, it need not assess whether the injury at issue in Monaco's preliminary injunction motion is sufficiently related to the conduct set forth in his Complaint to qualify.

returned to sender, is still a protected piece of mail and should be opened in front of the prisoner." (Doc. 42, #231). So the Court reviews the R&R's proposed outcome with that in mind.

To obtain a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (collecting cases). Here, the Court agrees with the Magistrate Judge that Monaco's request for such relief falls short, although for slightly different reasons than those expressed in the R&R.

Monaco contends that while he himself labeled the letters[3] as legal mail, because they lacked the required ODRC control number, they were instead classified by prison officials as regular mail. (Doc. 18, #98); *see* Ohio Admin. Code § 5120-9-17(B)(2). That means they didn't receive the protections the prison normally affords to incoming legal mail—i.e. opening the mail and inspecting it for contraband only in the inmate's presence. Monaco says that is a problem. Specifically, he claims that under existing Sixth Circuit caselaw, outgoing mail to prospective attorneys that is then returned to sender must be treated as constitutionally-protected "legal mail." (Doc. 18, #98). So he says ODRC's failure to do so warrants preliminary injunctive

---

[3] Monaco's Memorandum in Opposition to Defendants' Response in Opposition attempted to introduce another example—ODRC interfering with his receiving of an opinion in another case, interference that kept him from filing a timely appeal. (Doc. 22, #119). Defendants moved to strike. (Doc. 25). Because that evidence does not change the outcome of the Court's decision (for one thing, it happened in late 2021, before the new mail policy took effect), the Court denies the Motion to Strike (Doc. 25) as moot.

10

relief. (*Id.* at #231). But, while Monaco perhaps has some likelihood of success on his underlying claim, because he fails to demonstrate the requisite harm, the Court denies the preliminary injunction.

In pursuing an injunction, first, and perhaps foremost, Monaco must demonstrate "a strong likelihood of success on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quotation omitted). To do so, he "is not required to prove his case in full … [but] must show more than a mere possibility of success." *Id.* (first quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and then quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir.1997)).

This factor is admittedly a close call. Cutting against his argument, all the cases he cites in support simply hold that mail *from* an inmate's attorney is "legal mail." (*See* Doc. 18, #98 (citing *Sallier*, 343 F.3d at 877); Doc. 42, #231 (citing first *Snodgrass v. Smith*, No. 2:22-cv-3604, 2024 WL 1804997, at *8 (S.D. Ohio Apr. 25, 2024); and then *Kakowski v. Cnty. of Sacramento*, No. 2:16-cv-2549, 2019 WL 3253919, at *4 (E.D. Cal. July 19, 2019) ("Federal law requires only that incoming legal mail from a prisoner's attorney, clearly marked as such, be opened in the prisoner's presence.")). But here, Monaco is claiming that his outgoing mail *to* a prospective attorney (that is then returned to sender) is legal mail. That is a bit different context. So ODRC's conduct is not clearly violating Monaco's rights, at least under the caselaw he advances.

11

On the other hand, Ohio's new legal mail policies appear to give rise to some potentially legitimate constitutional concerns. Indeed, Monaco and quite a few other litigants are challenging the policies on a variety of fronts. (*See, e.g.*, Compl., *Shine-Johnson v. Chambers-Smith*, No. 2:22-cv-3236 (S.D. Ohio May 22, 2023), Doc. 12; Compl., *Straughter v. Eddy*, No. 2:23-cv-1268 (S.D. Ohio June 8, 2023), Doc. 6; Compl., *Thompson v. Ohio Dep't of Rehab. & Corr.*, No. 2:25-cv-143 (S.D. Ohio Apr. 29, 2025), Doc. 7). And the facts that Monaco describes here do strike the Court as at least concerning. Sure, caselaw characterizes incoming mail from an attorney as the archetypal "legal mail." But that is because incoming mail is what prison officials typically screen for contraband. Letters "returned to sender" are presumably only a small portion of the letters that a prison receives on any given day. But that most cases involve incoming legal mail does not necessarily mean that the contents of an inmate's outgoing mail to his attorney is any less important (or confidential) to the inmate's receipt of legal representation. The attorney-client privilege extends, after all, not only to the attorney's advice, but also to the information that a client provides to an attorney in connection with seeking that advice. *MA Equip. Leasing I, LLC v. Tilton*, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 2012) (citing Ohio Rev. Code § 2317.02(A)). So, for example, if the ODRC were to begin routinely reading outgoing letters that an inmate sent to an attorney, that would almost certainly create a constitutional problem. That is to say, Monaco's legal theory (that the contents of his outgoing mail to attorneys warrants protection) is certainly not dead in the water.

But then turn to the harm factor. This one is not so close. Remember, Monaco must demonstrate that he will suffer "irreparable harm" without the injunction. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550 (quotation omitted). But the Court finds that any potential harm to Monaco on the facts here is de minimis, not rising to the level of irreparable harm.

True, Monaco claims that since ODRC's latest screening of his bounced-back mail in August 2025, "he has not sent further correspondence's [sic] … [because of a] fear that the opposition will read critical and confidential correspondence if he has the wrong address again." (Doc. 42, #231). And denial of the right to communicate with an attorney can constitute an irreparable harm not compensable by monetary damages. *Novak v. Federspiel*, 649 F. Supp. 3d 562, 571 (E.D. Mich. 2023) ("The 'denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights'" (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). But the Court finds that such a denial is not present here. If Monaco elects not to seek out an attorney because he prefers to not run the risk that the letter will be searched if it is misaddressed, that is his prerogative. But that risk strikes the Court as minimal; indeed Monaco could eliminate it entirely by confirming the prospective attorney's correct address *before* sending confidential information. As the cited harm is avoidable, it does not weigh strongly in favor of injunctive relief. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324,

13

327 (6th Cir. 2019) (finding no irreparable harm when "a lot of ifs" suggested the harm was conditional, not "certain and immediate").

Additionally, Monaco fails to demonstrate that the balance of equities (including consideration of potential harms to others) favors a preliminary injunction. To start, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025) (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024)). But here, Monaco is asking the Court to instead change the status quo while his case is pending—indeed the policy in question has been in place for more than four years. (*See* Doc. 5, #59). ODRC would suffer some harm from needing to alter its (potentially constitutional) anti-contraband policies.

And that's not all. The Court can also imagine how enjoining the policy might result in other forms of harm. Specifically, the Court is concerned that an inmate might use the U.S. Postal Service's return-to-sender function as a means of receiving contraband without inspection. For example, an inmate could conceivably address a letter in the name of an attorney or law office, but instead use an accomplice's physical address. That accomplice could then open the letter, insert contraband into it, reseal it, and mark it as "no such person at this address." Presumably, that would result in the post office returning the letter to the inmate-sender. For both of these reasons, this factor cuts strongly against the injunction Monaco seeks.

That leads to the final factor, whether an injunction is in the public interest. The Court finds that it is not—especially in consideration of Monaco's weak showing

14

on the balance of harms. ODRC is a state agency saddled with the important task of securing the safety of inmates and the public more broadly. As a matter of public interest, courts should exercise restraint before interfering with a policy enacted for ostensibly legitimate security purposes, especially on the meager evidentiary record available at the preliminary injunction stage. *See, e.g.*, *Glover v. Johnson*, 855 F.2d 277, 285 (6th Cir. 1988) (wading into the "prerogatives of a state agency" without evidential support "is an excessively intrusive interference"); *see also* 18 U.S.C. § 3626(a)(2) (injunctive relief relating to prison conditions must be narrowly tailored). So after weighing all the requisite factors, in particular the balance of harms, the Court declines to enter the injunction.

**B.    The Court Overrules the Objections on the Rulings on the Non-Dispositive Motions.**

Monaco also objects to the Magistrate Judge's ruling denying two of his non-dispositive motions. (Doc. 42, #232–36). The Court's review of those rulings, however, is more circumspect: findings of fact are reviewed for clear error, and legal conclusions are set aside if they are contrary to the law. Finding no such error, the Court overrules Monaco's objections.

Both motions, the Motion to Compel Production (Doc. 24) and Motion for Sanctions (Doc. 35), stem from the parties' disagreements over Defendants' responses (or lack thereof) to Monaco's discovery requests. The Magistrate Judge denied both because "[i]t now appear[ed] the parties [were] trying to resolve their differences without Court intervention." (Doc. 39, #216). But Monaco objected, claiming that Defendants were continuing to act in bad faith. (*See* Doc. 42, #232 ("The two seasoned

attorneys bullied Mr. Monaco in the phone call [on October 16th].”). In the end, the Court finds no clear error in the Magistrate Judge's denial of the motions, and in any case, it appears that the discovery dispute has resolved itself.

"Under Rule 37 and the corresponding provision of the Southern District of Ohio's Local Rules, counsel have an obligation to attempt in good faith to resolve all discovery disputes extrajudicially (*i.e.*, without Court intervention) before filing motions to compel discovery." *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 464 (S.D. Ohio 2015) (citing Fed. R. Civ. P. 37(a)(1) and S.D. Ohio Civ. R. 37.1). "The scope of discovery is within the discretion of the trial court." *Johnson v. Hensley*, 62 F. App'x 85, 86 (6th Cir. 2003). Here, the Magistrate Judge used that discretion, determining that because the parties were engaging in good faith efforts to resolve the issues extrajudicially, Monaco's motions were, in a sense, premature and so denied them. (Doc. 39, #216). Monaco objected, primarily disputing the finding Defendants were acting in good faith. (Doc. 42, #232).

Whether the Defendants were engaging in discovery in good faith is a factual dispute reviewed for clear error. And the Court finds no such error in the Magistrate Judge's opinion. The day before the Magistrate Judge issued the R&R, the parties filed a Joint Status Report (signed by both parties) discussing the October 16, 2025, conference call and how the parties planned to move forward in responding to Monaco's discovery requests. (Doc. 38). That report reads to the Court like parties engaged in good faith attempts to resolve discovery. And while Monaco's objections lay out some further grievances, it appears those were largely addressed in the before-

mentioned status report. (Doc. 42, #232–34). For example, Monaco claims that one sticking point was status report language that Defendants had proposed indicating they would respond to his discovery requests within thirty days of the date of the decision on the pending motion to stay. (*Id.* at #232). But in the status report the parties filed with the Court, they deleted that language. (*See* Doc. 38, #207). So it seems that the parties hashed the issue out extra-judicially.

Also, of import here, the Magistrate Judge denied the motions without prejudice, leaving Monaco the opportunity to file a new motion if the discovery issues persisted. And when new discovery disagreements did arise (this time regarding the partial stay), Monaco did just that. (*See* Doc. 47). However, the parties continued to confer and file joint status reports, (Docs. 50, 54, 57, 60), and the issues Monaco raised became "either resolved or moot," so the Magistrate Judge denied that motion as well, (Doc. 61, #293). The issues Monaco raises in the two motions at hand likewise appear to have been rendered resolved or moot either by the stay or by the parties themselves, who have continued to engage regarding the non-stayed portion of discovery. Accordingly, the Court overrules Monaco's objections to the Magistrate Judge's dismissal.

## CONCLUSION

The Court **OVERRULES** Monaco's Objections (Doc. 42) and **ADOPTS** the R&R's (Doc. 39) recommendations. The Court therefore **DENIES** Monaco's Motion for Preliminary Injunction (Doc. 18). The Court also **DENIES** Defendants' Motion to Strike (Doc. 25) as moot.

17

**SO ORDERED.**

March 24, 2026
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**